UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CITY OF BRADENTON,

    Plaintiff,

v.                                 Case No.: 8:17-cv-267-T-33MAP

SAFETY NATIONAL CASUALTY
CORP.,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Safety National Casualty Corporation's Motion for Summary Judgment, filed on May 1, 2017. (Doc. # 14). Plaintiff City of Bradenton filed a response in opposition on May 19, 2017. (Doc. # 16). For the reasons that follow, the Motion is denied.

**I.**     **Background**

In October of 2000, Safety National and the City entered into an insurance contract for excess workers' compensation coverage with a policy period of October 1, 2001, to October 1, 2002. (Doc. # 14-1). Under the policy, Safety National would provide coverage to the City for any loss above a specified amount the City incurred on account of an employee's bodily injury caused by an accident or occupational disease.

1

(Id. at 1). The specified amount the City had to incur before the policy's excess coverage applied was $400,000. (Id. at 8). The policy additionally states under the heading "Reimbursement":

> If the [City] pays any Loss incurred in any Liability Period in excess of the [$400,000] Self-Insured Retention Per Occurrence, [Safety National] shall reimburse the [City] upon receipt of a formal proof of loss and other evidence acceptable to [Safety National] of such payment. Within a reasonable period of time, reimbursement payments shall be made by [Safety National].

(Id. at 5).

In April of 2001, a City of Bradenton police officer, J.L., tested positive for Hepatitis C and was deemed disabled in December of 2001. (Doc. # 2 at ¶ 6; Doc. # 14-2). Under Florida law, police officers who contract Hepatitis C under certain conditions are deemed to have contracted the disease in the line of duty. (Doc. # 1 at ¶ 7). Because the police officer met those statutory conditions, he was able to submit a workers' compensation claim that the City accepted. (Id.).

The City sent Safety National "Large Loss Reports," which summarized the benefits the City had paid out to J.L. and provided status updates on his condition. (Doc. # 14-9). The "Large Loss Report" dated August 31, 2011, reflected that the City had paid benefits exceeding $400,000. (Doc. # 14-9

at 5-6). On October 10, 2011, Safety National sent the City a letter stating, in relevant part,

> We have completed our investigation and determined that we must deny coverage of the loss as it was reported late and, as a result, we were kept from the opportunity to participate in the investigation and defense of the claim. Further, the loss did not occur during our Liability Period. . . . The correct date of loss is 5/29/1999 which pre-dates our liability coverage. Under the Coverage of Agreement section cited above, our policy only covers occurrences that take place within our Liability Period.

(Doc. # 14-11). The City received the letter on October 25, 2011. (Doc. # 14-12 at 2-3).

Despite Safety National's letter, the City sent Safety National an initial Request for Excess Reimbursement on June 28, 2012. (Doc. # 14-14). Safety National denied the City's first Request for Reimbursement on June 28, 2012, in an email stating, "Thank you for the correspondence and request for reimbursement on the above claim. However, Safety National has denied coverage for this claim on 10/10/2011. Our position remains unchanged." (Doc. # 14-15). The City submitted numerous requests for reimbursement in the following months, all of which Safety National denied on the same grounds. (Doc. # 14-16).

The City filed its Complaint in state court on November 23, 2016, bringing claims for declaratory relief and breach

3

of contract. (Doc. # 2). Safety National removed the case to this Court on February 2, 2017, and filed its answer and affirmative defenses on February 13, 2017. (Doc. ## 1, 5). As one of its affirmative defenses, Safety National "affirmatively states that the applicable Statute of Limitations precludes the City from pursuing the relief that it is seeking in this action." (Doc. # 5 at 6).

With the Court's permission (Doc. # 12 at 1), Safety National filed its Motion for Summary Judgment addressing only the statute of limitations issue on May 1, 2017. (Doc. # 14). The City responded on May 19, 2017. (Doc. # 16). The Motion is ripe for review.

## II. Legal Standard

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving

party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one

5

inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

III. **Analysis**

The parties agree that the five year statute of limitations period set by section 95.11(2)(b), Florida Statutes, applies to the City's claims. (Doc. # 14 at 12; Doc. # 16 at 6); see also Fla. Stat. § 95.11(2)(b) (setting a five year statute of limitations for "[a] legal or equitable action on a contract, obligation, or liability founded on a written instrument"). The question before the Court is whether the five year statute of limitations period for the City's claims for declaratory relief and breach of contract began to run when the City received Safety National's letter stating the City's loss was not covered by the policy, which

occurred by October 25, 2011, or when Safety National rejected the City's initial request for reimbursement on June 28, 2012.

Under section 95.031(1), "[a] cause of action accrues when the last element constituting the cause of action occurs" for statute of limitations purposes. Fla. Stat. § 95.031(1). "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009)(citing Friedman v. N.Y. Life Ins. Co., 985 So. 2d 56, 58 (Fla. 4th DCA 2008)). Thus, "a cause of action on a contract accrues and the statute of limitations begins to run from the time of the breach of contract." State Farm Mut. Auto. Ins. Co. v. Lee, 678 So. 2d 818, 821 (Fla. 1996); see also Allstate Ins. Co. v. Kaklamanos, 843 So. 2d 885, 892 (Fla. 2003)("In regard to insurance contracts, a specific refusal to pay a claim is the breach which triggers the cause of action." (quoting Donovan v. State Farm Fire & Cas. Co., 574 So. 2d 285, 286 (Fla. 2d DCA 1991))). The parties dispute when the alleged breach of contract occurred.

Safety National argues the alleged breach occurred when the City received its October 10, 2011, letter. (Doc. # 14 at

7

15). The City admitted receiving that letter no later than October 25, 2011. (Doc. # 14-12 at 2-3). Therefore, Safety National reasons the statute of limitations ran on October 25, 2016, and the City's claims are time-barred. (Doc. # 14 at 15).

The City counters that Safety National's October 10, 2011, letter was merely an anticipatory breach or "repudiation," which the City was not required to treat as an actual breach of the contract. (Doc. # 16 at 10-12). The Supreme Court has explained the important difference between an immediate breach and a repudiation:

> Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach. But the promisor's renunciation of a "contractual duty *before* the time fixed in the contract for . . . performance" is a repudiation. Such a repudiation ripens into a breach prior to the time for performance only if the promisee "elects to treat it as such."

Franconia Assocs. v. United States, 536 U.S. 129, 142–43 (2002)(internal citations omitted)(emphasis original). When faced with a repudiation, the non-breaching party has three options: "first, to rescind the contract altogether; second, to elect to treat the repudiation as a breach by bringing suit or by making some change in position; or, third, to await the time for performance of the contract and bring suit after

that time has arrived." Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So. 2d 571, 575 (Fla. 4th DCA 2006)(citation omitted). If the injured party does not treat the repudiation as a present breach but "instead opts to await performance, the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance rather than from the earlier date of repudiation." Franconia Assocs., 536 U.S. at 144 (citation and internal quotation marks omitted).

In support of its argument that the October of 2011 letter was a repudiation, the City emphasizes the contract requires it to submit a formal proof of loss as a condition precedent to reimbursement. (Id. at 12-13; Doc. # 14-1 at 5). Thus, the City reasons that Safety National did not definitively breach the contract until after the City submitted a formal proof of loss because Safety National's duty to reimburse the City did not arise until that condition precedent was met. See Starling v. Allstate Floridian Ins. Co., 956 So. 2d 511, 513-14 (Fla. 5th DCA 2007)(stating that submission of a sworn proof of loss within 60 days was a condition precedent to recovery under an insurance contract). The City also insists an insurer cannot deny a claim — "a formal request for payment made pursuant to the terms of the

policy" — until the insured actually submits a claim. (Id. at 9-10); see also Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co., No. 10-81397-CV, 2011 WL 5223127, at *3 (S.D. Fla. Nov. 2, 2011)("There can be no breach of the instant policies for failure to pay before a claim has been made."), aff'd in part, rev'd in part, 509 F. App'x 919 (11th Cir. 2013); Golden View Condo., Inc. v. QBE Ins. Corp., No. 11-60137-CIV, 2011 WL 13112060, at *4 (S.D. Fla. July 29, 2011)("[I]t is undisputed that as of the date it filed this suit, Golden View had not provided QBE with a claim or estimate regarding the nature or extent of the Hurricane Wilma-related damage to its property — an unequivocal fact which seemingly renders a specific denial by QBE as legally and factually impossible."). The City reasons that the August of 2011 "Large Loss Report" indicating the City had paid benefits beyond the $400,000 threshold was neither a claim nor a formal proof of loss because the report did not explicitly request reimbursement.

Instead, the City argues its June 28, 2012, request for reimbursement was its first claim and formal proof of loss because the City first made a specific demand for payment from Safety National in that request. (Doc. # 16 at 7-10); see also Roth v. State Farm Mut. Auto. Ins. Co., 581 So. 2d

10

981, 983 (Fla. 2d DCA 1991)("[T]he statute of limitations began to run on each claim when the Roths first received written notification that *that specific claim* was denied.")(emphasis added). The contract does not define "formal proof of loss" or "claim" and Safety National does not specifically allege that the August of 2011 "Large Loss Report" was a claim. See (Doc. # 16-1 at 2)(stating that "the City *notified* [Safety National] that payments it had made" exceeded the $400,000 threshold as of August 31, 2011)(emphasis added). And, while Safety National does not admit that the City's request for reimbursement was the first formal proof of loss, it also does not assert the earlier "Large Loss Report" provided by the City in August of 2011 qualified as a formal proof of loss. (Id. at 2-3).

Instead, Safety National argues that a formal proof of loss was not required to be submitted in this instance because "the requirement to submit a formal proof of loss only applies to 'any Loss incurred in any Liability Period.'" (Doc. # 14 at 15-16). And Safety National's October of 2011 letter stated the City's loss concerning J.L. "did *not* occur during its Liability Period." (Id. at 16)(emphasis original). But whether the City's loss was incurred during the policy period is hotly disputed, with the City maintaining that its claim

11

falls within the policy period. (Doc. # 2 at ¶ 16; Doc. # 16 at 18-19). And the subject of this Motion is limited to whether the statute of limitations has run, and the Court will not address the underlying merits of the City's claim, such as whether the J.L. worker's compensation claim arose within the policy period. A determination that the City's loss did occur within the liability period relates to whether Safety National actually breached the contract by denying coverage, as the City argues in its Complaint. But the question presented by the instant Motion is whether the Court may hear the City's claim for breach of contract at all, or whether the City waited too long to file its Complaint.

Regardless of whether the J.L. claim arose within the policy's liability period, Safety National's reading of the contract's reimbursement provision is flawed. First, the fact that Safety National posits the loss occurred outside of the liability period — and told the City as much in its October of 2011 letter — does not obligate the City to agree. The City concluded it was entitled to reimbursement and the contract specifies that Safety National's duty to reimburse the City is triggered when a formal proof of loss is submitted. There is no explicit exemption from the proof of loss requirement for instances in which Safety National

12

determines that a loss occurred outside the liability period *before* any proof of loss is submitted. Thus, by the terms of the contract, regardless of whether Safety National already made a determination regarding the liability period, Safety National's performance was not ultimately due until "receipt of a formal proof of loss and other evidence acceptable to [Safety National]." (Doc. # 14-1 at 5).

Second, the language stressed by Safety National — "[i]f the [City] pays *any Loss incurred in any Liability Period*" — merely indicates that Safety National has a duty to reimburse only losses incurred within the liability period. (Doc. # 14-1 at 5)(emphasis added). That language does not alter the contract's specification of the steps the City must take to trigger Safety National's duty to reimburse it when that duty exists. And, even if that language were ambiguous, it must be read against Safety National, which drafted the contract. Biscayne Cove Condo. Ass'n v. QBE Ins. Corp., 971 F. Supp. 2d 1121, 1141 (S.D. Fla. 2013)("[A]ny ambiguity [in the insurance contract] is strictly construed against the drafter and liberally in favor of the insured." (quoting Allstate Floridian Ins. Co. v. Farmer, 104 So. 3d 1242, 1245 (Fla. 5th DCA 2012))).

Taking the facts in the light most favorable to the City, the City's first request for reimbursement sent on June 28, 2012, was its first claim and formal proof of loss. And, because Safety National's October 10, 2011, letter denying coverage was sent before the City officially requested reimbursement, that letter was a repudiation. Cf. Dutra v. Kaplan, 137 So. 3d 1190, 1192 (Fla. 3d DCA 2014)(noting that defendant's statement that he would not purchase plaintiff's interest in a home they co-owned as agreed was an anticipatory breach or repudiation because it was made before payment was due under the agreement). And the City had the option to either treat the repudiation as an immediate breach or wait for Safety National's failure to perform under the contract before filing suit. The City could have treated the letter as an actual breach, but chose not to.

Instead, the City sent the initial request for reimbursement on June 28, 2012. (Doc. # 14-14). After Safety National denied that request, the City sent additional requests for reimbursement, which Safety National again denied. (Doc. # 14-16). Taking these facts in the light most favorable to the City, the City did not treat Safety National's October of 2011 letter as an immediate breach. Instead, the City awaited performance and submitted a formal

14

proof of loss — its first request for reimbursement — months later on June 28, 2012. That same day, Safety National denied the City's request for reimbursement, at which point the cause of action for breach of contract accrued.

Safety National argues that treating the denial of the City's request for reimbursement as the date of accrual permits the City "to arbitrarily, unilaterally and indefinitely toll the running of the Statute of Limitations for commencing a cause of action arising out [of] a claim that [Safety National] has advised is not covered, by simply delaying its submission of a 'formal' proof of loss." (Doc. # 14 at 16). Safety National emphasizes the City submitted its request for reimbursement about eight months after Safety National sent its letter stating the J.L. claim did not arise within the policy period and about ten months after the City exceeded the $400,000 benefits threshold. (Id. at 15). According to Safety National, holding that the alleged breach of contract did not occur until the City formally requested reimbursement and was denied goes against the purpose of the statute of limitations. "[A]llowing the City to proceed with the instant action would enable and encourage 'the unexpected enforcement of stale claims brought by plaintiffs who have slept on their rights,' and a fair reading of [the

Reimbursement section of the policy] does not warrant a different conclusion." (Id. at 17).

But, "[u]nder Florida law, insurance contracts are to be construed 'in accordance with the plain language of the policies as bargained for by the parties.'" State Nat'l Ins. Co. v. White, 482 Fed. Appx. 434, 438 (11th Cir. 2012)(per curiam)(quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). And "[a]ny ambiguity [in the insurance contract] is strictly construed against the drafter and liberally in favor of the insured." Biscayne Cove Condo. Ass'n, 971 F. Supp. 2d at 1141 (citation omitted). The contract required the City to submit a formal proof of loss as a condition precedent to Safety National's reimbursement. Safety National did not include an explicit exemption from the proof of loss requirement for instances in which it determines that a loss occurred outside the liability period before any proof of loss is submitted. And Safety National chose not to include a deadline for the City to submit such a proof of loss after meeting the $400,000 benefits threshold. The Court will not ignore the proof of loss requirement or infer a time limitation for submission of a proof of loss that is not present in the contract. Nor will the Court disregard the well-established law on repudiation because

Safety National is displeased with the result of its application. See Franconia Assocs., 536 U.S. at 146 (2002)(declining to adopt an interpretation that would "convert the repudiation doctrine from a shield for the promisee into a sword by which the [promisor] could invoke its own wrongdoing to defeat otherwise timely suits").

Taking the facts in the light most favorable to the City, the City's June 28, 2012, request for reimbursement was the first claim and formal proof of loss submitted to Safety National, as required to trigger Safety National's duty to reimburse the City. Because the City chose not to treat Safety National's October 10, 2011, repudiation as a present breach of contract, the cause of action accrued on June 28, 2012, when Safety National denied the City's initial request for reimbursement. Thus, taking the facts in the light most favorable to the City, the five year statute of limitations will run on June 28, 2017, and the City's Complaint, filed on November 23, 2016, was filed within the statute of limitations.

Therefore, Safety National has not met its burden of proving that no genuine issue of material fact exists regarding the applicability of the statute of limitations. See Morton's Mkt., Inc. v. Gustafson's Dairy, Inc., 198 F.3d

823, 828 (11th Cir. 1999), amended in part, 211 F.3d 1224 (11th Cir. 2000)("The commencement of the statute of limitations is a question of fact. It cannot be determined upon motion for summary judgment if there is a genuine question as to when it began to run." (internal citations omitted)). The Motion for Summary Judgment (Doc. # 14) is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Safety National Casualty Corporation's Motion for Summary Judgment (Doc. # 14) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 6th day of June, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE